STATE OF VERMONT
SUPERIOR COURT - ENVIRONMENTAL DIVISION

Brisson et al. v. Town of Monkton        {        Docket No. 24-2-13 Vtec

## Decision on Motion for Summary Judgment

This declaratory judgment action arises from an application filed by Brisson Stone, LLC, Allan Brisson, and Michael Brisson (Applicants) for a "gravel extraction operation" in the Town of Monkton, Vermont (the Town). Applicants submitted the application in January 2012 and the Zoning Administrator denied it in February 2012. Applicants appealed that denial to the Town of Monkton Development Review Board (the DRB). After numerous public hearings and deliberative sessions between March 27, 2012 and January 22, 2013, the DRB ultimately denied the application by vote on January 22 and issued its written denial on February 26, 2013. Applicants have appealed the February 26 denial to this Court. That matter is entitled In re Brisson Gravel Extraction Application and has been assigned Docket No. 34-3-13 Vtec. The related matter has been on inactive status pending the outcome of this declaratory judgment action. The Court has been handling the two related matters in a coordinated fashion pursuant to VRECP 2(d). This decision is only in the declaratory judgment matter.

Pending before the Court is Applicants' motion for summary judgment asking this Court to find Applicants' project approved as a matter of law under a legal doctrine commonly referred to as "deemed approval." Applicants argue that they are entitled to the remedy of deemed approval under 24 V.S.A. § 4464(b)(1) because the DRB failed to issue an opinion within 45 days of the close of the evidence on its application. The Town argues that material facts are in dispute as to when the final public hearing on the application was held and therefore when the deemed approval clock started running. Applicants are represented by attorneys Matthew E. Rohrbaugh, David J. Shlansky, and Colin R. Hagan. The Town is represented by attorneys Liam L. Murphy and Damien J. Leonard. Finally, interested person Claudia Orlandi is represented in both this matter and the coordinated appeal by attorney James A. Dumont. Ms. Orlandi has filed a letter with the court joining in and supporting the Town's opposition to the motion for summary judgment.

1

## Factual Background

For the purpose of putting the pending motion into context, the Court recites the following facts, which it understands to be undisputed unless otherwise noted:

1.  Applicants applied for a permit for a gravel extraction operation with the Town of Monkton Zoning Administrator (ZA) on January 11, 2012. Applicants' property is located in the R-5 Rural Agricultural zoning district. Gravel extraction is a permitted use in any zoning district in the Town, following a public hearing, and subject to approval of a rehabilitation plan. The ZA denied the application on February 9, 2012. Appellants appealed this denial to the DRB on February 22, 2012.

2.  Interested person Claudia Orlandi argued to the DRB that the application should be denied because Applicants' proposed use was not a gravel extraction operation but was instead a quarrying operation which is not a permitted use.

3.  The DRB held the first full public hearing on April 24, 2012. This hearing was continued to May 22, 2012, and the DRB requested certain information from Applicants. The DRB specifically asked Applicants and other interested parties to be prepared to discuss the difference between a gravel extraction operation and a quarrying operation.

4.  At the conclusion of the May 22 hearing, the hearing was continued to July 24, 2012. This July 24 hearing was rescheduled to August 28, 2012. At the August 28 hearing, the DRB took evidence and testimony, including the testimony of experts presented by Applicants and other witnesses.

5.  The August 28, 2012 hearing was continued to October 23, 2012. The DRB advised the parties of procedures to follow in preparing for the October 23 hearing and indicated its hope and intent that it would be able to decide the discrete issue of whether the proposal was an unpermitted use following the October 23 hearing.

6.  Another public hearing was held on October 23, 2012. The DRB took further evidence, including expert testimony. At the end of the hearing the DRB voted to continue the public hearing on the application to November 27, 2012.

7.  On November 12, 2012, the DRB discussed the application in a private deliberative session that was not a pubic hearing on the application.

8.  Due to public and personal commitments, the DRB notified the parties that it would be unable to reach a decision before the November 27 hearing and that it would therefore

2

officially open the hearing at its scheduled time and then continue it to a date certain. No parties have submitted evidence that anyone opposed this action by the DRB. The DRB did in fact open the hearing on November 27 and continued it to January 22, 2013.

9. On December 20, 2012 and again on January 8, 2013, the DRB entered private deliberative sessions where it discussed the application. It is undisputed that these were not public hearings.

10. On January 22, 2013, the DRB held the scheduled public hearing where the application was discussed. The DRB formally accepted a number of correspondences from Applicants and others submitted during the interim period between hearings. Applicants, through their attorney, were allowed to speak on a number of procedural issues including whether the DRB had engaged in *ex parte* communications, whether a March 30, 2012 letter from the Town's counsel should be part of the record, whether the DRB could rely on that letter, and whether the application was deemed approved in the interim between the November 27, 2012 and January 22, 2013 hearings. Other parties were given an opportunity to speak on the application.

11. At the January 22, 2013 hearing, the DRB voted to deny the application. The DRB issued its written denial on February 26, 2013.

12. Applicants timely appealed that decision and filed this separate declaratory judgment action for deemed approval of the application.

## Discussion

The only issue Applicants raise in their complaint is whether they are entitled to have their conditional use application deemed approved pursuant to 24 V.S.A. § 4464(b)(1). In support of their motion, Applicants argue that there is sufficient undisputed evidence to establish that the DRB closed the evidentiary portion of the hearing on the application at the close of the October 23, 2012 hearing. Applicants further argue that because the DRB failed to issue a decision within 45 days of the October 23 hearing, the application was approved by operation of law on the 46th day following that hearing. The Town disputes this allegation and argues that the evidence was not closed until the final public hearing on January 22, 2013. Because the decision was made within 45 days of the January 22 meeting, the Town argues that time period for deemed approval was not reached. The Town further argues that the DRB was only considering a preliminary issue, whether the project was a permitted gravel extraction operation, and not the merits of the

3

application. For this reason, the Town argues that the application was still open, as a positive finding on that preliminary issue would have required additional public hearings.

## I.    Summary Judgment Standard

The Court will grant summary judgment to a moving party only if that party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a); V.R.E.C.P. 5(a)(2). We will "accept as true the [factual] allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material," and we will give the non-moving party the benefit of all reasonable doubts and inferences. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356.

## II.    Deemed Approval

The deemed approval remedy for an application before an appropriate municipal panel is established by 24 V.S.A. § 4464(b)(1), which states in relevant part:

> The appropriate municipal panel may recess the proceedings on any application pending submission of additional information. The panel should close the evidence promptly after all parties have submitted the requested information. The panel shall adjourn the hearing and issue a decision within 45 days after the adjournment of the hearing, and failure of the panel to issue a decision within this period shall be deemed approval and shall be effective on the 46th day.

In interpreting and applying this statutory provision we are required to apply the plain meaning of the statutory language in order to give effect to the legislature's intent. State v. O'Neill, 165 Vt. 270, 275 (1996).

The Vermont Supreme Court has taken a conservative approach in applying the deemed approval remedy and has "refused to apply the statute in a 'wooden fashion,' [but has instead] reserved it for cases where it clearly implements the statutory purpose." In re McEwing Servs., LLC, 2004 VT 53, ¶ 21, 177 Vt. 38 (quoting In re Newton Enters., 167 Vt. 459, 465 (1998)). The statutory purpose of deemed approval is to "remedy indecision and protracted deliberations on the part of zoning boards and to eliminate deliberate or negligent inaction by public officials." In re Fish, 150 Vt. 462, 464 (1988). In determining whether application of deemed approval is appropriate "[w]e must balance this purpose against the paramount obligation to protect the safety and general welfare of the public." Newton Enters., 167 Vt. at 465.

Applicants argue that they are entitled to this remedy because the DRB failed to issue a decision within 45 days of the October 23, 2012 hearing. They argue that the plain language of the

4

statute only allows the DRB to recess the hearing "pending the submission of additional information." Applicants contend that the DRB did not intend to take additional information after the October 23, 2012 hearing, that it did not take additional information after this hearing, and that the statutory period therefore began running after this hearing. The parties dispute the questions of when the DRB intended to close the evidence and when the DRB actually closed it.

The plain language of § 4464(b)(1) indicates that the legislature intended the adjournment of a hearing, rather than the closing of evidence, to have a binding effect on the DRB. Specifically, the statute states that the "panel should close the evidence promptly after all parties have submitted the requested information" and "[t]he panel shall adjourn the hearing and issue a decision within 45 days after the adjournment of the hearing." 24 V.S.A. § 4464(b)(1) (emphasis added). Thus, the legislature employed mandatory language, "shall," to govern the adjournment of the hearing and 45 days for a decision, whereas the closing of evidence is addressed by more permissive language. In applying the previous deemed approval statute (the now repealed 24 V.S.A. § 4407(2)), our Supreme Court also concluded that the adjournment of the public hearing triggers the deemed approval period, rather than "'deliberative sessions' accompanied by nonbinding representations about the status of the evidence." McEwing Servs., 2004 VT 53, ¶ 12 (finding that numerous unnoticed meetings closed to the public, without continuing the public hearing, and acceptance of some evidentiary items offered by Applicant, were insufficient to toll the deemed approval period). Applicants argue that the McEwing decision supports application of deemed approval under the facts of this case. However, important differences distinguish that case and the case presently before us.

In McEwing, the DRB, after holding a public hearing, made nonbinding statements that the evidence on the application before them remained open and that they might need additional information. These nonbinding assertions were accompanied by deliberative sessions and not public hearings. "Deliberations" are defined by statute as "weighing, examining and discussing the reasons for and against an act or decision, but expressly excludes the taking of evidence and the arguments of parties." 1 V.S.A. § 310(1). In contrast, "a public hearing occurs for purposes of [deemed approval] if: (1) the hearing is open to the public, (2) the applicant receives notice of the hearing, (3) the board offers an opportunity for interested persons to be heard on the issues before it." Fish, 150 Vt. at 465. The DRB in McEwing did not continue the hearing or hold an additional public hearing that met all three Fish requirements. The Supreme Court held that the DRB's

deliberative sessions and statements that the evidence remained open were insufficient to toll the deemed approval period. McEwing Servs., 2004 VT 53, ¶ 12, ¶ 16.

In the present case, the Town argues that by continuing the public hearing to a date certain, the DRB did more than make "nonbinding representations about the status of the evidence." It argues that the evidence remained open, as the future public hearing would allow "an opportunity for interested persons to be heard on the issues before [the DRB]." Id. at ¶ 13 (citing Fish, 150 Vt. at 465). Because the DRB continued the hearings to dates certain and all three Fish requirements for a public hearing were met at the January 22, 2013 continued public hearing, it is argued that the deemed approval clock did not begin to run until the adjournment of that hearing.

Applicants argue that this allows a municipal panel to perpetually continue a public hearing on an application for the sole purpose of tolling the deemed approval deadline. Applicants focus on the language of § 4464(b)(1), specifically the provision that a municipal panel "may recess the proceedings on any application pending submission of additional information." According to Applicants, this means that if the DRB lacked the intent to receive additional information at the end of a public hearing, the hearing is effectively adjourned and not recessed. We read this requirement of § 4464(b)(1) more broadly than Applicants suggest.

A municipal panel cannot be expected to foresee exactly what additional information it may need to make its determination. At the close of a public meeting where multiple experts testified and where significant evidence was presented, the DRB may be reasonably uncertain as to whether it received sufficient information. Under such circumstances, if the panel votes to continue the public hearing to allow time to sort through that evidence and give interested parties another opportunity to be heard before a final decision, we cannot say as a matter of law that the hearing was not recessed pending submission of additional information. A municipal panel need not specifically identify such information in order to recess the hearing and continue it to a date and time certain. To hold otherwise would place an unreasonable and impractical burden on municipal panels to exercise complete foresight.

Based on the plain meaning of the statute and our Supreme Court's application of deemed approval, we find that so long as the panel continues the public hearing to a date certain and actually holds that public hearing, pursuant to the three factors in Fish, the deemed approval clock does not start until the adjournment of that hearing absent a showing of intentional delay or

6

inaction. The purpose of the deemed approval statute would be fulfilled, however, by applying it where a showing is made that a municipal panel continued a public hearing to a date certain with the sole intent of tolling the deemed approval deadline and giving themselves more time to make a decision.

We find that the question of the DRB's intent to close the evidence and adjourn the hearing is in dispute. The determination of what a municipal panel intended to do and its reasons for doing so is a question of fact that will need to be resolved at the hearing scheduled for January 17, 2014. We also recognize that the DRB considered only the preliminary issue of whether the proposed use was permitted by the Regulations and had yet to consider whether the other requirements of the Regulations were met. The parties dispute the import of this fact and whether the DRB would have had to receive additional evidence or hold additional hearings had it determined that the project as proposed was in fact a gravel extraction operation.

## Conclusion

For the reasons detailed above, we find that material facts are in dispute and that Applicants have not shown that they are entitled to judgment as a matter of law on the sole issue presented in this declaratory judgment action. We therefore **DENY** Applicants' motion for summary judgment.

This matter was previously set for hearing on January 17, 2014.


Done at Berlin, Vermont this 23rd day of December, 2013.


Thomas G. Walsh,
Environmental Judge

7